IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

STEVEN E. SMITH,

Defendant.

No. CR01-0057

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  *FACTUAL AND PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . 2

III. *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     A.   *The Government's Amended Motion to Modify Restitution..* . . . . . . . 6
     B.   *Defendant's Motion to Review and Modify Restitution.* . . . . . . . . 7
         1.   *Does the District Court Have Jurisdiction to Modify the Order of Restitution?..* . . . . . . . . . . . . . . . . . 7
         2.   *Is Defendant Entitled to Offset for the Items Allegedly Seized or Returned to the Victims?.* . . . . . . . . . . . . . . 9

IV.  *RECOMMENDATION.* . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. *INTRODUCTION*

On November 20, 2009, this matter came on for hearing on the Amended Motion to Modify Restitution (docket number 86) filed by the Government on August 18, 2009, and the Motion to Review and Modify Restitution (docket number 90) filed by Defendant Steven E. Smith on October 22, 2009. The Government was represented by Assistant United States Attorney Martin J. McLaughlin. Defendant Steven E. Smith appeared personally and was represented by his attorney, Charles H. Nadler.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 2002, Defendant pleaded guilty to one count of credit card fraud. On March 18, 2003, Defendant was sentenced to 74 months imprisonment, three years supervised release, and payment of restitution in the amount of $95,092.44. *See* docket number 43. However, on June 4, 2003, the district court entered an Order of Restitution (docket number 58), reducing the amount owed to $88,869.09.[1] The Order listed 26 victims, together with the specific amount owed to each victim.

The last three victims listed on the Order of Restitution (identified as X, Y, and Z) were Goodyear Tires, Office Depot, and GMAC. In each case, the Order provides that the claims "may be able to offset in part" due to the return of items recovered from Defendant. The Order, which was "[a]pproved as to form and content" by counsel for the Government and counsel for Defendant, stated further:

> The last three claims listed as X, Y, and Z may be offset by the recovery and liquidation of security and the Clerk of Court for the United States District Court for the Northern District of Iowa may setoff from these amounts any recovery by the victims based upon any recovery of value that the victims were able to salvage from the recovered items. United States Attorney's Office will continue to work with these victims to assure that the property is turned over following any appeal and to assure that proper credit is given to the defendant's obligation to the victim.

*See* Order of Restitution (docket number 58) at 3; ¶ 2.

On July 17, 2009 – more than six years later – the Government filed a Motion to Modify Restitution (docket number 84), regarding the appropriate offsets for the claims of Goodyear Tire, Office Depot, and GMAC. According to the motion, the Clerk of Court received a letter from GMAC on May 23, 2008, indicating that $10,600 "should be

---

[1] Apparently, the reduction in the amount of restitution owed resulted from a determination that Slumberland, Wells Fargo, and Heilig-Meyers were not entitled to restitution. *See* Order of Restitution (docket number 58) at 4; ¶ 3.

applied to the outstanding obligation."[2] The motion states that "[t]he Clerk has indicated the money was so applied and reduced Mr. Smith's debt by $10,600."[3] Accordingly, the balance owed to GMAC was reduced to $8,139.69.

Regarding the claims of Goodyear Tire and Office Depot, the Government reported that those debts "are now owned by Citibank." Officials at Citibank were unable to provide any information, however, regarding what recovery Goodyear or Office Depot may have received from a liquidation of the items recovered from Defendant.[4] Accordingly, the Government requested that Defendant be given credit for the entire amount of those two debts. Specifically, the Government asked that Defendant be given credit in the amount of $2,233.39. The request was granted, and on July 21, 2009 the district court ordered the Clerk of Court to deduct $2,233.39 from Defendant's outstanding restitution obligation. *See* docket number 85.

On August 18, 2009, the Government filed the instant Amended Motion to Modify Restitution (docket number 86). Citing a mathematical error, the Government asks that Defendant receive credit in the amount of $2,222.39, a difference of $11.00 from that previously ordered. At the time of hearing, counsel for Defendant stated that he had no objection to the amended motion to modify. The Court notes parenthetically, however, that the amended motion to modify misstates – by $1.00 – the claim of Office Depot. It appears that Defendant is entitled to credit in the amount of $2,223.39, rather than $2,233.39, as previously ordered.

The principal dispute is whether Defendant is entitled to any additional credits. In his instant Motion to Review and Modify Restitution (docket number 90), Defendant

---

[2] One assumes that the $10,600 represents the proceeds from the sale of the van which was recovered and returned to Bob Brown's Chevrolet in Des Moines.

[3] *See* Motion to Modify Restitution (docket number 84) at 2; ¶ 5.

[4] Apparently, four tires were returned to Goodyear, and "computer equipment" was returned to Office Depot.

3

concedes that he owes restitution to some of the victims in the amounts reflected on the Order of Restitution. Specifically, Defendant concedes that he owes the following amounts:

| A. | Conseco Finance | $5,000.85 |
|---|---|---|
| C. | Firstar Bank – Visa | 1,489.23 |
| D. | Steven Craig Smith | 800.00 |
| I. | Center Point Bank and Trust | 105.67 |
| J. | Sprint | 735.09 |
| K. | U.S. Cellular | 573.71 |
| L. | Firestone Tires | 770.00 |
| P. | Radio Shack | 2,279.21 |
| R. | Penny Witzenburg | 1,144.07 |
| T. | Office Depot | 3,102.84 |
| U. | Costco | 1,464.50 |
| Z. | GMAC | 8,139.69 |
| TOTAL | | $25,604.86 |

*See* Motion to Review and Modify Restitution, Exhibit A (docket number 90-2).

However, Defendant asserts that other items were "returned or seized" and that he should receive credit for them. Specifically, Defendant asserts that he is entitled to credit against the claims of the following victims:

| B. | Sears | $4,960.67 |
|---|---|---|
| E. | Von Maur Inc. | 3,988.06 |
| F. | Citibank | 3,993.93 |
| G. | First USA Bank | 9,226.96 |
| H. | Best Buy | 5,135.20 |
| M. | Sears | 4,109.06 |

| N. | Lowes | 3,271.66 |
|----|-------|----------|
| O. | Menards | 2,197.87 |
| Q. | Sam's Discount Warehouse | 3,192.00 |
| S. | Home Depot | 1,197.05 |
| V. | J.C. Penney | 1,968.38 |
| W. | Factory Outlet | 7,200.00 |
| TOTAL | | $50,440.84 |

*See* Motion to Review and Modify Restitution, Exhibit A (docket number 90-2).

At the time of hearing, Defendant proffered that he would testify to the annotations found on Exhibit A regarding the seizure of items fraudulently obtained by Defendant. For example, regarding the $4,960.67 owed to Sears, Smith states:

> These items were traded to Tina Bennett and her boyfriend for drugs. The items were seized by the DEA upon her arrest. Agent Brugman can probably verify this.

*See* Motion to Review and Modify Restitution, Exhibit A (docket number 90-2). Smith makes reference to the same note regarding his claims for offset against Citibank ($3,993.93), First USA Bank ($9,226.96), Best Buy ($5,135.20), Sam's Discount Warehouse ($3,192.00), and Home Depot ($1,197.05). That is, Defendant agreed when the restitution Order was entered that these six victims were entitled to restitution in the amount of $27,705.81. Defendant now asserts, however, that "these items" were traded for drugs, subsequently seized by law enforcement, and ostensibly returned to the victims.

In support of his claim, Defendant offered four "property control forms" completed by the Coralville Police Department. *See* Defendant's Exhibit D. For example, Form No. 16529 identifies items seized from a 1992 Eagle Talon. The property would appear to be of nominal value.[5] Form No. 16531 identifies items seized at the home of Whitney

---

[5] The items seized included 23 "articles of clothing" in a duffle bag, 6 empty CD cases, an electric adapter, a sunglass case, a DVD, jumper cables, and a black "carrying (continued...)

Reckemeyer, who was identified as Defendant's ex-girlfriend. Reckemeyer apparently reported that the items were purchased from Von Maur in Iowa City using a falsified credit application. Again, the items appear to have minimal value.[6] Form No. 16675 reflects four tires taken from Defendant's vehicle.[7]

Defendant's proffer did not include any information regarding whether the seized items were returned to any of the victims. Even *if* some items were returned to the victims, Defendant's counsel conceded at the time of hearing that Defendant has no evidence regarding how that merchandise was disposed of, or what amounts may have been received by the victims, if any.

### III. DISCUSSION

### A. The Government's Amended Motion to Modify Restitution

In its Amended Motion to Modify Restitution, the Government requests that the district court modify its July 21, 2009 Order, in which it directed the Clerk of Court to deduct $2,233.39 from Defendant's outstanding restitution obligation. Citing an arithmetical error, the Government asks that the amount be adjusted to $2,222.39. Defendant does not object and offers no resistance to the Government's motion. It appears, however, that the Amended Motion contains its own error. The claim of Office Depot was $1,549.55, not $1,548.55 as stated in the Amended Motion. Therefore, the Court recommends that the Government's Amended Motion to Modify Restitution should be granted, with Defendant given credit for $2,223.39 against the claims of Goodyear Tire and Office Depot.

---

[5] (...continued)
bag" containing a DVD and miscellaneous software.

[6] The items seized included a diaper bag containing miscellaneous clothes and two other bags containing clothing.

[7] It would appear that these are the four tires which were returned to Goodyear, and for which Defendant has now been given credit. As noted earlier, Defendant concedes that he still owes $770.00 to Firestone Tires.

## B. Defendant's Motion to Review and Modify Restitution

In his motion, Defendant claims that additional items were returned to the victims or seized by law enforcement, and therefore, should be offset from his restitution obligation.[8] Defendant also believes that the items listed under N, O, and V of the Order of Restitution "may have been returned or seized, and if so, that he should be given credit for them."[9] In its resistance, the Government argues that: (1) Defendant failed to provide a legal basis for the modification of his restitution obligation; (2) Defendant provides no evidence to support his allegations that seized items were returned to the victims; and (3) the issue of offset was addressed at sentencing and by entry of the Order of Restitution filed on June 4, 2003, and applied only to the victims addressed under X, Y, and Z of the Order of Restitution.

### 1. Does the District Court Have Jurisdiction to Modify the Order of Restitution?

Defendant's motion is entitled a "Motion to Review and Modify Restitution." Strictly speaking, however, the motion does not ask that the Court "modify" the restitution which is owed to the victims, but rather asks that it hold a hearing to determine "whether there are any credits due to be applied to those items."[10] The Government argues that "Defendant provides no legal basis as to the modification of restitution," and asserts further that "[t]here is no evidence before the court as to the basis of Defendant's allegations that victims received these items back."[11] Nonetheless, counsel for the

---

[8]*See* Motion to Review and Modify Restitution (docket number 90) at 2; ¶ 12; *see also* Exhibit A (docket number 90-2) attached to Defendant's motion which asserts that the items in B, E, F, G, H, M, Q, S, and W were seized by law enforcement from Defendant upon his arrest or seized by law enforcement from individuals he traded with for drugs upon their arrests.

[9] *See* Motion to Review and Modify Restitution (docket number 90) at 2-3; ¶ 13.

[10] *See* Motion to Review and Modify Restitution (docket number 90) at 3.

[11] *See* Government's Resistance to Motion to Review and Modify Restitution
(continued...)

Government conceded at the time of hearing that if Defendant was able to establish that a victim had received money for the return of seized items, then the Government would likely agree that Defendant should be given credit for that.

The only authority cited by Defendant in support of his motion is *United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005). There, the district court ordered the defendant to pay restitution to the Iowa Division of Narcotics Enforcement for "controlled buy money expended during the investigation," and also ordered forfeiture of defendant's vehicle and cash. The Court of Appeals concluded that if the defendant could establish that the Iowa DNE received any forfeiture funds, then the district court must modify the restitution Order "to prevent double recovery." *Id.* at 776. Apparently, the Government does not contest the general proposition that a victim is not entitled to "double recovery."[12]

Other courts have concluded that a sentencing court retains jurisdiction "to entertain petitions to straighten out 'messes' regarding restitution." *United States v. Watson-El*, 2009 WL 1765007 at *2 (W.D. Mo.) (citing *United States v. Holland*, 380 F. Supp. 2d 1264, 1269 (N.D. Ala. 2005)). In *Watson-El*, the restitution Order mistakenly included both the actual loss and intended loss, thereby doubling the amount ostensibly owed by the defendant. On a motion filed by the defendant four years later, and by stipulation of the government, the Court modified the restitution Order to correct the error.

Turning to the facts in the instant action, the Order of Restitution filed on June 4, 2003 specifically referred to possible "offsets," or credits, to be given to Defendant on the amounts owed to Goodyear Tire, Office Depot, and GMAC. Paragraph 2 of the Order identifies the three claims and provides that the United States Attorney's office will work with "these victims" to assure that "proper credit is given to the defendant's obligation to

---

[11](...continued)
(docket number 95) at 2; ¶ 6.

[12] In its resistance, the Government did not cite any authority whatsoever. At the request of counsel, the Court gave the parties two weeks following the hearing in which to submit additional authority, but received none.

the victim." While Defendant now argues that the reference in paragraph 2 was intended to apply to all 26 victims, the Court rejects that argument. The sentence directing the United States Attorney to work with "these victims" immediately follows a sentence which refers to the claims of Goodyear Tires, Office Depot, and GMAC.[13] Mr. Nadler, acting as counsel for Defendant, approved the Order of Restitution as to form and content. Obviously, if he believed that Defendant may be entitled to additional credit for returned items, he could have requested that additional appropriate language be included in the Order.

Nonetheless, the Court in *Ruff* makes it clear that a victim is generally not entitled to a double recovery. That is, if items were seized and returned to a victim, and if those items still had value, then generally a victim should not be entitled to recover from the Defendant the value of the returned items. Defendant bears the burden of proof that he is entitled to an offset or credit. *See Ruff*, 420 F.3d at 776 ("If Ruff believes he can establish excess recovery by the Iowa DNE, he bears the burden to initiate further proceedings regarding any restitution offset."). Accordingly, I believe that the district court retains jurisdiction, upon an appropriate showing by the Defendant, to grant the Defendant credit to prevent a double recovery.

### 2. Is Defendant Entitled to Offset for the Items Allegedly Seized or Returned to the Victims?

As set forth above, I believe the district court retains jurisdiction to order an offset, or credit, for items seized and returned to the victims. Defendant bears the burden of proof in this regard, however, and he has failed to meet that burden here.

At the time of hearing, Defendant's counsel proffered that Defendant would testify consistently with the annotations found on Exhibit A. That is, in referring to the claims by Sears, Citibank, First USA Bank, Best Buy, Sam's Discount Warehouse, and Home Depot, Defendant would testify that "these items" were traded for drugs. Defendant

---

[13] Paragraph 2 of the Order of Restitution is set forth in full on page 2 of this Report and Recommendation.

further asserts that the items were seized by the DEA when Tina Bennett and her boyfriend were arrested. According to the annotation, Agent Brugman "can probably verify this." Simply put, Defendant's allegations in this regard fall far short of proving that he is entitled to an offset or credit in order to prevent double recovery to a victim.

Defendant also offered three "property control forms" listing a small number of items seized by the Coralville Police Department. These forms also fall woefully short of meeting Defendant's burden of proof. For example, Form No. 16531 reflects that a diaper bag containing miscellaneous clothes and two other bags of miscellaneous clothes were recovered from Whitney Reckemeyer, Defendant's ex-girlfriend.[14] These items were turned over by Reckemeyer at her residence and were allegedly purchased at Von Maur in Iowa City using a falsified credit card obtained by Defendant. There is no evidence that the items were returned to Von Maur, or that they had any value upon their return. Clearly, their value did not equal Von Maur's claim of $3,988.06, as ordered by the district court in its Order of Restitution.

The Court believes that Defendant has failed to prove that he is entitled to *any* additional credit against the restitution Order previously entered. Defendant did not offer reliable evidence regarding the items which were allegedly seized from third persons. There is no evidence that the seized items were returned to the victims. There is no evidence that the items, if returned, had any value to the victims upon their return. There is no evidence that the items were resold by the victims. In short, Defendant has failed to prove that if he is required to pay the restitution amounts previously ordered by the Court, it would result in a double recovery to one or more victims. Therefore, the Court respectfully recommends that Defendant's request that he be given additional credit against the restitution Order previously entered be denied.

---

[14] Form No. 16531 is attached to Defendant's Exhibit D, but is only partially legible.

## IV. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **GRANT** the Amended Motion to Modify Restitution (docket number 86) filed by the Government on August 18, 2009 (in the adjusted amount of $2,223.39), and **DENY** the Motion to Review and Modify Restitution (docket number 90) filed by Defendant Steven E. Smith on October 22, 2009.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on November 20, 2009.*

DATED this 6th day of January, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA